IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PETER A. SVEUM and SUSAN L. SVEUM,

                Defendant-Appellant,       OPINION AND ORDER

v.

                                                            13-cv-00789-wmc

STOUGHTON LUMBER CO., INC.,

                Plaintiff-Appellee.

---

Peter A. Sveum appeals from a judgment entered in the Bankruptcy Court for the Western District of Wisconsin finding that their debt to appellee Stoughton Lumber Co., Inc., was nondischargeable. The court affirms the bankruptcy court's judgment due to Peter's defalcation. The court also finds that the bankruptcy court's nondischargeability order was not overbroad based on its reference to the liability that may arise from Dane County Circuit Court Case No. 12-CV-2812 ("*Stoughton II*").

BACKGROUND[1]

Appellant Peter Sveum filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the Western District of Wisconsin on October 2, 2012. *In re Sveum*, No. 12-15483 (Bankr. W.D. Wis.). Peter, along with his brother Phillip, has co-owned and co-operated Kegonsa Builders, Inc. ("KBI"), a home-building company, since 1989. Appellee Stoughton Lumber Co., Inc. ("Stoughton Lumber") supplied materials and services to KBI. Between July 2008 and January 2011, KBI purchased on credit and received materials and services from Stoughton Lumber to construct 34 residential

---

[1] The parties do not generally challenge the Bankruptcy Court's factual findings in this case. The essential facts are briefly summarized below.

properties.  As the housing market deteriorated, KBI fell behind on its payments despite Stoughton Lumber's efforts to collect.

In January 2011, Stoughton Lumber sued KBI, Peter, and Phillip in Dane County Circuit Court, alleging three causes of action: breach of contract; theft by contractor, pursuant to Wis. Stat. § 779.02(5); and theft by officer, pursuant to Wis. Stat. 779.02(5).  *Stoughton Lumber Co. v. Kegonsa Builders, Inc.*, No. 11-CV-220 (Wis. Cir. Ct. Dane Cnty.) ("*Stoughton I*").  In June 2011, Stoughton Lumber settled with KBI, Peter and Phillip.  Pursuant to the settlement agreement, Stoughton Lumber received: 1) $100,000; 2) a Promissory Note in the amount of $550,000 from KBI guaranteed by the Sveum brothers; 3) a subordinate mortgage against real estate owned by Sveum Investment Company, Inc.; and 4) the right to 50% of the profits of KBI's construction projects until Stoughton Lumber had been paid in full.  The settlement agreement also called for Stoughton Lumber's claims to be dismissed with prejudice.

On February 8, 2012, the first lien holder on the real estate securing the settlement initiated foreclosure proceedings.  Under the terms of the settlement agreement, foreclosure on collateral constituted default, which led Stoughton Lumber to file a second lawsuit in Dane County Circuit Court to collect the $568,263.10 balance due on the promissory note.  *Stoughton Lumber Co. v. Kegonsa Builders, Inc.*, No. 11-CV-2812 (Wis. Cir. Ct. Dane Cnty.) ("*Stoughton II*").  Stoughton Lumber moved for summary judgment, and a hearing was set for October 4, 2012.  On October 2, 2012, Peter and Phillip, along with their spouses, filed for bankruptcy.  On October 4, 2012, Stoughton Lumber obtained a default judgment against KBI for $589,638.10 ($578,180.61 in damages and $11,458.50 in fees and collection costs).  Peter and

Phillip, as guarantors of the settlement agreement, each listed a personal debt to Stoughton Lumber of $568,263.10 on their bankruptcy schedules. After the Sveums filed for bankruptcy, Stoughton Lumber commenced the adversary proceeding that is the subject of this appeal.[2] *Stoughton Lumber Company, Inc., v. Peter A. Sveum*, No. 13-00002 (Bankr. W.D. Wis.).

In the adversary proceeding, Stoughton Lumber asserted that the debt created in the *Stoughton I* settlement agreement was nondischargeable because it arose from fraud or defalcation under 11 U.S.C. § 523(a)(4). Specifically, Stoughton Lumber maintained that Peter committed theft-by-contractor pursuant to Wis. Stat. § 779.02(5) by failing to hold, remit or hold in trust for Stoughton Lumber proceeds KBI received from the sale of buildings constructed using Stoughton Lumber materials. Stoughton Lumber also claimed that KBI submitted construction draw requests to its lenders, identifying the subcontractors -- including Stoughton Lumber -- to be paid with the draws, but Peter never provided those funds to the identified subcontractors. Rather than being segregated, proceeds from these draws were instead deposited into a single bank account and became part of a general pool used to pay bills, business expenses, overhead and some subcontractors at Peter's direction. Additionally, as KBI continued to sell homes while neglecting to pay Stoughton Lumber, Peter signed false affidavits representing to the banks and title companies that all subcontractors had been paid in full.

---

[2] Stoughton Lumber also commenced an adversary proceeding against Phillip Sveum pertaining to the same issue of nondischargeability. *Stoughton Lumber Company, Inc., v. Phillip A. Sveum*, No. 13-00003 (Bankr. W.D. Wis.). These two adversary proceedings were consolidated into the one bench trial that is now the subject of this appeal.

3

The bankruptcy court conducted a bench trial on August 1, 2013. At the end of the trial, the court issued an oral opinion in favor of Stoughton Lumber. (Dkt. #5-1, pg. 244-251.) The bankruptcy court specifically found that Peter had violated Wisconsin's theft-by-contractor statute, and in doing so demonstrated a conscious disregard for his duty to hold funds in trust for Stoughton Lumber. In reaching this conclusion, the bankruptcy court pointed out that Peter acknowledged intentionally using payments from draws to pay parties other than the subcontractors who contributed to the projects securing the loan on which the draws were made. The bankruptcy court also noted that Peter made false representations on seller's certificates stating that all subcontractors had been paid in full when in fact they had not.

Judge Martin found that these misrepresentations constituted at the very least a "willful disregard for [Peter's] fiduciary duty," and at most, "outright fraud." (*Id.* at 250.) While Peter argued that he did not know his actions violated the theft-by-contract statute at the time, Judge Martin found this claim of ignorance to be "disingenuous." (*Id.* at 249.) Judge Martin further found that someone in Peter's position must have known that the funds he received were held in trust for subcontractors and that his actions amounted to defalcation. Based on these findings, the bankruptcy court ordered that the debt owed to Stoughton Lumber, whether embodied in the original settlement agreement or otherwise, was nondischargeable under 11 U.S.C. § 523(a)(4).

OPINION

Pursuant to 28 U.S.C. § 158(a), Peter now appeals from the bankruptcy court's judgment on two bases: (1) the bankruptcy court had insufficient evidence to find that

4

Peter was willfully blind to the fiduciary duties imposed on him by the Wisconsin theft-by-contractor statute, Wis. Stat. § 779.02(5); and (2) the bankruptcy court's nondischargeability order was overbroad in scope because it encompasses more than just Peter's liability to Stoughton Lumber for violating the theft-by-contractor statute. This court reviews the bankruptcy court's findings of fact deferentially for clear error and its legal conclusions de novo. *See In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007) (citing Fed. R. Bankr. P. 8013 and *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998)).

I. Nondischargeability

Wisconsin's Theft by Contractor Statute provides in relevant part:

> **Theft by Contractors.** The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, *constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing* from the prime contractor or subcontractor for labor, services, materials, plans, and specification used for the improvements, *until all the claims have been paid*, and shall not be a trust fund in the hands of any other person. *The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims*, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, *have been paid in full or proportionally in cases of deficiency*, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20.

Wis. Stat. § 779.02(5) (emphasis added).

In order to demonstrate an exception to discharge under 11 U.S.C. § 523(a)(4), a creditor must demonstrate: "(1) the existence of a trust; (2) the debtor having been a

5

fiduciary of that trust; and (3) fraud or defalcation by the debtor while acting as a fiduciary of the trust." *Chase Lumber & Fuel Co. v. Koch* (In re *Koch*), 197 B.R. 654, 657 (Bankr. W.D. Wis. 1996). The only disputed element of § 523(a)(4) on appeal is whether the bankruptcy court clearly erred in finding that Peter's actions in violation of the theft-by-contractor statute constituted defalcation.

Given the nearly overwhelming facts supporting the court's finding, the question essentially answers itself. Nevertheless, Peter devotes significant space to outlining the defalcation standard, and the court accordingly reviews it here. Recently, in *Bullock v. Bank Champaign*, N.A., 133 S. Ct. 1754 (2013), the United States Supreme Court definitively addressed the level of culpability required for conduct to constitute defalcation under 11 U.S.C. § 523(a)(4). Before *Bullock*, there was a split among bankruptcy judges as to the mental state necessary under 11 U.S.C. § 523(a)(4). *Compare Starfire v. Dolata* (In re Dolata), Bankr. No. 08-23866-pp, Adversary No. 09-2056, 2010 WL 3860481, at *10 (Bankr. E.D. Wis. Oct. 1, 2010) (Pepper, J.) ("more than mere negligence" is required to demonstrate defalcation under § 523(a)(4)), *with Romes Design, Inc. v. Dinkins* (In re *Dinkins*), 327 B.R. 918, 923 (Bankr. E.D. Wis. 2005) (McGarity, J.) ("[n]o wrongful intent is required for a finding of nondischargeability").

*Bullock* involved a trustee who on several occasions borrowed and then repaid funds from a trust established by his father. 133 S. Ct. at 1757. The beneficiaries brought a suit against the trustee, and the state court found that even though the trustee did not act with "a malicious motive," his actions clearly involved self-dealing. *Id.* (quoting App. To Pet. For Cert. 45a, 52a). When the trustee filed for bankruptcy, the judgment against him was deemed nondischargeable because it constituted a debt for

6

defalcation while acting in a fiduciary capacity. *Id.* at 1758. The District Court and Eleventh Circuit Court of Appeals upheld the bankruptcy court's ruling. *Id.*

In appealing to the U.S. Supreme Court, the trustee disputed the standard of culpability applied by the lower courts, and argued that defalcation required more than a showing of "objective recklessness." *Bullock*, 133 S. Ct. at 1759. The Supreme Court agreed, holding that "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, [defalcation] requires an *intentional* wrong." *Id.* (emphasis added). The court concluded, however, that actual knowledge of wrongdoing was not necessary to establish such intent; the requirement was also met where the fiduciary "'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk'" that his conduct will violate a fiduciary duty. *Id*. The court framed such recklessness as "a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*. at 1760.

Given the *Bullock* Court's confirmation of a heightened level of culpability for a finding of defalcation, Peter argues that the bankruptcy court could not have found he acted with the requisite state of mind. This argument is fundamentally flawed on two levels. First, Judge Martin applied the right standard: he found Peter Sveum committed exactly the kind of knowing or willfully blind wrong required after *Bullock* to constitute defalcation under 11 U.S.C. § 523(a)(4).[3] Second, there is more than sufficient evidence

---

[3] Indeed, the standard adopted in *Bullock* is consistent with both Judge Martin's and the Seventh Circuit's previous interpretation of defalcation. *See, e.g., Meyer v. Rigdon,* 36 F.3d 1375, 1384-85 (7th Cir. 1994) ("[A] mere negligent breach of a fiduciary duty is *not* a defalcation under Section 523(a)(11).") (emphasis in original); *Chase Lumber & Fuel Co. v. Koch* (In re *Koch*), 197 B.R. 654, 657 (Bankr. W.D. Wis. 1996) (describing defalcation as "more than negligence, though less than fraud," and noting that "something akin to "reckless' may be the appropriate standard."); *In re Polus*, 455 B.R. 705, 708-09 (Bankr. W.D. Wis. 2011) ("'Defalcation is defined as something

in the record to support the court's finding that Peter acted knowingly or at least with willful blindness to his fiduciary duties under the Wisconsin theft-by-contractor statute.

Peter testified to consciously and intentionally directing payments to pay parties other than the subcontractors who contributed to the projects securing the loan on which the draws were made. (Dkt. #5-1 at 111-116) As co-owner and co-officer, Peter also personally instructed his Controller with respect to every payment made from subcontractor trust funds. In light of that testimony, the bankruptcy court articulated ample reason to find Peter *knew* those funds were being diverted away from rightful the beneficiary of the constructive trust in violation of his fiduciary duties.

Finally, although unnecessary to the overall holding, the court went on to point out that KBI failed to segregate funds received as draws on the improvement of real estate to ensure that they ultimately went to the appropriate subcontractors. Instead, the money was placed in a single account used to pay general operating expenses and bills. What the bankruptcy court justifiably found most telling was that Peter, despite being fully aware that he was not segregating and directing payments to the particular subcontractors and suppliers in question, he was still regularly and knowingly making false representations on seller's certificates that all subcontractors for the property had been paid in full. Indeed, Judge Martin found that such intentional misrepresentations to title companies likely went beyond defalcation and constituted common law fraud. (*Id.* at 250.)

While questions could be raised as to the bankruptcy court's finding that the "five fingers of fraud" were present -- particularly reliance, given that the representations were

more than negligence.'").

8

being made to a title company that arguably was accepting them in blank and in advance of completion of work -- upholding the bankruptcy court's judgment does not depend on a finding of common law fraud.  *See Bullock*, 133 S. Ct. at 1759-60 (knowledge of wrongdoing or willful blindness to substantial risk that conduct will violate fiduciary duty is sufficient).

Far from being "clearly erroneous," the bankruptcy court's determination as to Peter's misconduct here derives support from nearly overwhelming evidence of knowledge of wrongdoing *and* willful blindness to his fiduciary duties.  Peter's claims of ignorance of his obligations to hold draws in trust for work done plays no better in this court than in the court below.  Indeed, it fares worse, since this court can only review such a credibility determination for an abuse of discretion.  *See Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989).  Here, Stoughton Lumber's president, Jim Gerber, testified that the duties created by the theft-by-contractor statute are well known.  Peter himself testified that he had a general knowledge of the law.  Given the facts of record, Peter's argument that the bankruptcy court's finding of conscious disregard was clearly erroneous finds no purchase.

Peter's main argument is that no evidence supports the finding that he knew he had *trust obligations* under the theft-by-contractor statute, even though he knew it existed and had more than three decades of practical contracting experience.  While Peter testified that he did *not* know of those particular obligations, the bankruptcy court found his claims of ignorance "disingenuous," and this court holds it had ample grounds to do so.  (Dkt. #5-1 at 190-195.)  In Judge Martin's words, the duty created by the theft-by-contractor statute is so "fundamental to construction law" (a statement supported in

9

Gerber's testimony and otherwise uncontradicted) that it proved impossible to accept Peter's testimony. (*Id.* at 249.) This court is required to be deferential to such credibility determinations and does not disturb them in the absence of clear error, as the bankruptcy court is in the best position to make such findings. *See* Fed. R. Bankr. P. 8013 ("[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses").

In light of this deferential standard of review, and cognizant of the evidence of knowledge and willful blindness outlined above, the court has no basis to find that the bankruptcy court erred in discounting Peter's testimony. This credibility determination, combined with Peter's questionable actions and decades of experience, provide a sufficient basis to find that his violation of the theft-by-contractor statute constituted defalcation. Therefore, the court finds no error in the bankruptcy court's ruling and will affirm the judgment of nondischargeability.

## II. Overbreadth of Nondischargeability Order

Peter also challenges as overbroad the bankruptcy court's order defining his nondischargeable, pre-petition debt as any amount, "whether reduced to judgment in Dane County Circuit Court Case No. 12-CV-2812, or any judgment or settlement thereafter." While Peter's argument on this issue is less than a model of clarity, as the court understands it, he is contending that his liability for defalcation, which arose from the settlement of Dane County Circuit Court Case No. 11-CV-220 ("*Stoughton I*"), is not the same as the liabilities that are the subject of Dane County Circuit Court Case No.

10

12-CV-2812 ("*Stoughton II*"), to which the bankruptcy court referred in its order.[4]

In support of his argument, Peter cites to the U.S. Supreme Court case *Archer v. Warner*, 538 U.S. 314 (2003), but, if anything, that case supports the opposite conclusion. The bankruptcy debtor in *Archer* argued that a settlement agreement resulted in a kind of novation that replaced an original potential debt for money obtained by fraud with a new dischargeable debt. *Id.* at 318. The debtor claimed that this new debt was not for money obtained by fraud, but was instead for money promised in a contract, which altered the character of the debt. *Id.* The Supreme Court rejected this argument, holding that even though the settlement may have acted as "a kind of novation," that novation did not bar an objection to discharge. *Id.* at 322.

The Supreme Court concluded that it is necessary to examine, just as the bankruptcy court did here, whether the conduct underlying the settlement agreement constituted fraud or defalcation, as "the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." *Archer,* 538 U.S. at 320-21 (quoting *Brown v. Felsen*, 442 U.S. 127, 138 (1979)). Indeed, this case is factually analogous to *Archer*: Stoughton Lumber sued KBI seeking money allegedly obtained through defalcation; the parties settled for a fixed sum that KBI did not pay; and Stoughton Lumber now claims that fixed sum is nondischargeable. Consistent with *Archer*, Stoughton Lumber had every right to ask the bankruptcy court to examine the "true nature" of the debt embodied in the *Stoughton I*

---

[4] Stoughton Lumber may have misunderstood Peter's argument on this issue to be one of *res judicata*. The court does not interpret Peter's argument as such, and Peter states as much in his reply brief. (*See* Appellant's Reply Br. (dkt. #4) 4.). That said, any confusion on the part of Stoughton Lumber is understandable, as Peter's arguments on this issue were far from clear.

settlement agreement.

As was also the case in *Archer*, there is no doubt the conduct that prompted *Stoughton I* and the resulting settlement involved fraud or defalcation. The only difference between this case and *Archer* is that there is another link in the chain of events: the *Stoughton II* lawsuit, which seeks to enforce the *Stoughton I* settlement agreement. Even with this intervening lawsuit, however, the reasoning in *Archer* requires this court to examine the true nature of the debt that would be embodied in the judgment or settlement arising from *Stoughton II*. In this case, there is a causal chain connecting Peter's original defalcation to the *Stoughton II* lawsuit. There would be no *Stoughton II* lawsuit had there not been settlement of the *Stoughton I* lawsuit, and there would not have been the *Stoughton I* lawsuit had it not been for Peter's original misconduct, which the bankruptcy court had ample reason to find constituted defalcation. As a result, any monetary judgment in *Stoughton II* arising from the debt created in the *Stoughton I* settlement agreement also arises from Peter's underlying defalcation, which set this whole sequence of litigation in motion.

Peter also appears to argue that the bankruptcy court's order is overbroad because it would exclude from discharge damages for contractual interests, expenses and attorney's fees associated with *Stoughton II*, in addition to any damages incurred by an alleged violation of the trust. This argument, too, fails based on the reasoning in *Archer*. While *Stoughton II* on its face may be a suit to enforce a settlement, the settlement terms that Stoughton Lumber is attempting to enforce embodies a debt for defalcation. It logically follows from the holding in *Archer* that if the bankruptcy court can exclude from discharge a settlement embodying a debt for defalcation or fraud, it can also exclude from

12

discharge any liability associated with enforcing that same settlement. *Id.* at 320-22; *see also In re Schwartz*, No. 07-30508, 2007 WL 3051865, at *3 (Bankr. S.D. Tex. Oct. 17, 2007) ("In § 523 proceedings, the relevant inquiry focuses on the conduct *from which the debt originally arose*. Liable parties can not erase the history of a debt's origin through a settlement and subsequent breach of the settlement.") (emphasis added).

Peter points to no authority, in *Archer* or elsewhere, that makes such a hyper-technical distinction either necessary or sensible between the original debt owed and additional fees, expenses and interests awarded pursuant to the express terms of the original settlement agreement in *Stoughton I*. As already noted, *Archer* simply mandates that the court examine the underlying character of a debt to determine if, on a fundamental level, it arose from fraud or defalcation. As a result, any expenses, fees or interests awarded in *Stoughton II* pursuant to contractual rights set forth in the original settlement agreement would still amount to money owed for defalcation, and be barred from discharge. Accordingly, the court finds no factual or legal error in the scope of the bankruptcy court's opinion and order and will affirm the judgment of nondischargeability as it extends to liability arising out of the *Stoughton II* lawsuit.

ORDER

IT IS ORDERED that

1) the bankruptcy court's judgment that Peter's conduct constituted defalcation under 11 U.S.C. § 523(a)(4) is AFFIRMED; and

2) the bankruptcy court's determination that Peter's pre-petition debt, "whether reduced to judgment in Dane County Circuit Court Case No. 12-CV-2812, or any judgment or settlement thereafter is nondischargeable" is AFFIRMED.

Entered this 23rd day of September, 2014.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        WILLIAM M. CONLEY
                                        District Judge